### TSCHETINIAN v. CITY TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   October 14, 1904.)

1. CORPORATIONS—MORTGAGES—FALSE REPRESENTATIONS—TRUSTEES—LIABILITY.

A mortgage to a trustee, securing corporate bonds, provided that it was for the issue of a series of first mortgage bonds, to be certified by the trustee, and returned to the mortgagor's officers, whose receipt for the bonds should "be full acquittance and authority to the trustee for such certification and delivery." The mortgage further provided that the

trustee should not incur any liability for permitting the mortgagor to retain possession of the property mortgaged, nor should it be responsible for any breach of covenants by the mortgagor, "nor for any cause, matter, or thing except the trustee's own gross negligence or willful default in the trust expressed," etc. Each of the bonds was indorsed, "First Mortgage $500 Five Per Cent. Gold Bonds," and contained a certificate, signed by the trustee, that the bond was one of a series described in the mortgage referred to. The bonds also contained a statement that they were secured by the mortgage conveying the property and franchises of the corporation, to which reference was made for a description of the property and franchises mortgaged. *Held*, that the trustee did not guaranty the truthfulness of the description of the obligation by the corporation, and was, therefore, not liable to a bondholder for loss occurring by reason of the fact that the mortgage securing the bonds was not a first mortgage on all the corporation's property and franchises.

Appeal from Special Term, Richmond County.

Action by James Tschetinian against the City Trust Company of New York. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-WARD, JENKS, and HOOKER, JJ.

Albert B. Boardman, for appellant.

William R. Barricklo, for respondent.

HIRSCHBERG, P. J. I do not think the complaint states a cause of action against the defendant. It alleges, in substance, that on May 1, 1900, a New Jersey corporation, known as the United States Carbonate Company, executed to the defendant, a trust company chartered in this state, a mortgage upon certain lands in the state of New Jersey, which mortgage is annexed to and forms a part of the complaint. By the mortgage it appears that it was executed to the defendant as trustee, and that it provides for the issue of a series of first mortgage bonds to be certified by the defendant in a form set forth in the instrument, and to be returned after such authentication to the president or vice president of the mortgagor, whose receipt for such bonds "shall be full acquittance and authority to the trustee for such certification and delivery." The mortgage further provides as follows:

"The said United States Carbonate Company further agrees for itself its successors or assigns, and for the holders of any of the bonds to be issued and secured hereby, and this trust is accepted on the express condition that the trustee shall not nor shall any future trustee, incur any liability or responsibility whatever in consequence of permitting or suffering the party of the first part hereto to retain or to be in possession of the estate and premises hereby mortgaged or agreed or intended so to be or any part thereof, and to use and enjoy the same; nor shall it be responsible in any way for any breach on the part of the party of the first part of any of the covenants herein contained, or of any act of said company, its agents or servants, nor shall the said trustee, present or future, be or become liable or responsible for any cause, matter or thing except its own gross negligence or willful default in the trusts herein expressed and contained. The trustee shall be under no obligation or duty to perform any act hereunder or to defend any suit in respect hereof unless indemnified to its satisfaction nor shall the trustee be bound to recognize any person as a bondholder until his bonds are submitted to the trustee for inspection, if required, and his title satisfactorily established, if disputed, nor shall it be any part of the duty of the trustee to see to the proper recording of this instrument."

The complaint further alleges that on November 1, 1900, the plaintiff purchased from the mortgagor 20 of the bonds issued as provided for in the mortgage, the form of the bonds being also attached to and made a part of the complaint. By such annexed exhibit it appears that each bond was indorsed, "First Mortgage $500 Five Per Cent. Gold Bond," and contained, also indorsed, the trustee's certificate in the form required by the terms of the mortgage, and signed by the defendant, as follows: "This bond is one of the series of bonds mentioned and described in the mortgage within referred to." In the body of the bond is contained a statement that the bonds "are equally secured by a mortgage or deed of trust, dated May first, one thousand nine hundred, executed by said company to City Trust Company of New York, as trustee, conveying the property and franchises of United States Carbonate Company mentioned in said mortgage or deed of trust, to which reference is hereby made for a description of the property and franchises mortgaged, and the nature and extent of the security, and the rights of the holders of the said bonds under the same, and the terms and conditions upon which said bonds are issued and secured." It is further alleged in the complaint that at the time of the execution of the mortgage there existed a prior mortgage on the property covered by it; that the mortgagor at that time owned valuable franchises and other property not included in the mortgage, although the bonds "purported to be secured by a mortgage to the defendant as trustee on all the property and franchises of the company"; that the bonds "were not secured by a first mortgage or any other mortgage upon the property and franchises of the United States Carbonate Company"; and that in consequence the plaintiff, by his purchase, has sustained a total loss of the money therein invested. It is not claimed that the complaint is to be construed as charging that no mortgage was in fact given as security for the bonds, nor could the allegations of the complaint, taken as a whole, be regarded as containing such a charge.

The plaintiff demands judgment against the defendant for the amount of the purchase price of the bonds upon the theory that the certificate signed by it is a representation and guaranty that the bonds are in fact secured by a mortgage which is a first lien upon the mortgaged property, and that such mortgage includes all the property and franchises of the mortgaging company. The certificate certainly does not purport upon its face to create such a guaranty, or to make such a representation. It is confined in apt language to the assertion that the bonds which the plaintiff purchased constituted a part of the issue mentioned and described in the mortgage, and there is no claim or pretense but that such statement is strictly true, both in substance and in spirit. Nor was there anything in the defendant's connection with the transaction at all calculated to deceive. Prospective purchasers of the bonds were fairly referred to the mortgage by the documents themselves for a disclosure of the nature and extent of the security, and the mortgage contains an explicit statement of the measure and the limit of the liability assumed by the defendant. The plaintiff at the time of his purchase had within his possession or control the means of knowing that the defendant did not assume to guaranty the acts of the mortgagor, the freedom of the property from prior lien, the sufficiency of the title,

or the adequacy of the security which the mortgaged property afforded. The description of the bonds as first mortgage bonds by the words indorsed on them did not purport to be, and is not alleged to be, the act of the defendant; and no case is cited, in this state at least, which holds that the guarded and limited terms of the defendant's certificate may be lawfully held to embrace a representation or guaranty of the truthfulness of the description of the obligation as made by the obligor. Had the defendant been charged with knowledge of any material misstatement or misdescription calculated to deceive purchasers, a different question might have been presented, and the fact that the act complained of was that of another might not avail as a defense. But, in view of the length of time during which it has been the custom of trustees of bond issues to act in that capacity for a comparatively trifling consideration, limiting their liability to their own acts of negligence and misconduct, without, so far as appears, a single adjudication extending the liability to even the implied guaranty of the securities whose mere identity they have authenticated, it would be unfair, in the circumstances detailed in the complaint, to impose so serious a burden upon the office assumed by the defendant in the financial transaction in question. As in practice it would be almost impossible to prevent the bonds from containing some descriptive reference to the nature of the security purporting to be created, the rule suggested would, in effect, make the liability of a trustee who assumed only the discharge of duties of fiduciary administration coextensive with that of the principal debtor who creates the obligation and receives the entire pecuniary consideration.

I cannot refer to all the cases cited by the respondent. They are chiefly cases wherein the indorser of a promissory note or bill of exchange has been held to guaranty the genuineness of the instrument, or that it is what it purports to be, and confers the rights which it pretends to do. Such cases have obviously no application. Others are cases where false and fraudulent representations were undoubtedly made by vendors at the time of a sale, and for the purpose of effecting the sale. Such were the cases of Haight v. Hayt, 19 N. Y. 464, and Schwenck v. Naylor, 102 N. Y. 683, 7 N. E. 788. In Bruff v. Mali, 36 N. Y. 200, the officers of the company were charged with selling certificates representing stock fraudulently overissued by them, and it was held that they were liable to the assignees in good faith for the false certificates so issued by them. In McClure v. Central Trust Co., 165 N. Y. 108, 58 N. E. 777, 53 L. R. A. 153, the defendant was sued for damages resulting from the sale of its own certificate of stock, the sale being made by it as the agent of an undisclosed principal. The court held that the nature of the transaction and the relative situation and circumstances of the parties bound the defendant to the promises of the prospectus by which the sale was heralded to deliver marketable stock free from lien; that the law imposed upon the defendant the duty of inquiry to see whether there was anything conflicting with the advertised engagement under which it acted; that the rule of caveat emptor could not be invoked to protect it from the liability incurred by its own delinquency; and that the fact that the purchaser knew that it was acting only as agent could not avail as a defense, since it did not disclose the

name of the principal.    It is sufficient to distinguish that case from the one at bar that that action was against the seller of the article acting in law as the owner and principal, and not against one whose function on the sale was limited to stamping the article sold as a certification of its identity, authenticity, and genuineness.

The interlocutory judgment should be reversed, with costs, and the demurrer sustained, with costs.    All concur.